JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from an order of Judge Ann T. Mannen that granted summary judgment to appellees G.W.D. Enterprises, Inc. and Wilbert Dubic (collectively, "GWD"), on appellant Lawrence V. Cox's claims of fraud. We affirm.
{¶ 2} In 1991, Rade Obradovic owned property located at 5304 Detroit Avenue in Cleveland, and was the sole shareholder of 5304 Detroit, Inc. ("5304"), an entity that owned and operated a tavern at that location. Obradovic, on behalf of 5304, executed a cognovit promissory note to Allied Investment Credit Corporation ("Allied"), secured by the corporation's assets, and guaranteed by him and an open-ended mortgage for up to $21,075 on his real property. Allied subsequently assigned the note and mortgage to GWD, a corporation managed by Dubic. At some point, Obradovic executed a second promissory note, not presented in the record of this case, also secured by both his real property and the 5304 corporate assets. In August 1994, Obradovic, as an individual, obtained a $10,000 loan from Cox secured only by his note and a mortgage on his real property.
{¶ 3} Because 5304 defaulted on its indebtedness in September 1994, GWD obtained judgment on the cognovit note against 5304 and Obradovic for $16,112.94, with interest at fifteen percent (15%) per annum from June 23, 1994 and costs.
{¶ 4} In October 1994, Lutheran Medical Center filed a judgment lien to secure its own judgment as a creditor of Obradovic in the amount of $7,624.13, with interest at ten percent (10%) per annum from October 28, 1992 and costs.
{¶ 5} On January 25, 1995, Obradovic executed a quit claim deed that transferred his interest in his real property to Cox in exchange for satisfaction of his mortgage debt.
{¶ 6} In March 1995, GWD transferred, for enforcement purposes, its judgment under its cognovit note, to the Cleveland Municipal Court and receivership proceedings commenced to sell the assets of 5304, its liquor license and business. While Cox was not a party to those proceedings, he was aware of them and is noted on a court document as the attorney for both 5304 and Obradovic.
{¶ 7} On May 11, 1995, GWD instituted foreclosure proceedings in the Court of Common Pleas against the instant real estate, naming Cox and his wife as defendants/property owners. The real estate was sold by the Sheriff for $23,000 and, in November 1996, GWD received $16,705.73 against its judgment as a priority creditor in the foreclosure case.[1]
This payment exhausted the proceeds of the Sheriff's sale, leaving nothing for Cox, the former owner nor any creditor.
{¶ 8} Sometime in 1997 or 1998, the receiver in Cleveland Municipal Court transferred the liquor license issued to 5304 for $20,000 and paid out $11,473 to GWD.
{¶ 9} Cox sued GWD and Dubic in the case sub judice, claiming that GWD had fraudulently induced Obradovic to execute the cognovit note and second advance of funds, and had also failed to account to him or "any other creditors of 5304 Detroit, Inc. or to Rade Obradovic" for the proceeds of the 5304 assets or the proceeds of the foreclosure sale. Obradovic was not a party to this case nor could he be found by any party for purposes of this suit.
{¶ 10} GWD moved for summary judgment on the basis that: (1) Cox was not the real party in interest; (2) the action was barred by the statute of limitations and; (3) the action was barred by the doctrine of laches. The judge granted the motion without opinion.
{¶ 11} Cox appeals in four assignments of error, which we discuss together:
 {¶ 12} I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEES WHEN REASONABLE MINDS MIGHT DIFFER AS TO WHETHER OR NOT APPELLEES COMMITTED A FRAUD ON THE COURT AND APPELLANT.
 {¶ 13} II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEES WHEN APPELLANT HAD AN INTEREST IN AND STANDING EVIDENCED BY WAY OF QUIT CLAIM DEED, TO ALL OF THE RIGHT TITLE AND INTEREST IN REAL ESTATE OWNED BY A FORECLOSED MORTGAGOR, OBRADOVIC.
 {¶ 14} III. THE TRIAL COURT ERRED IN GRANTING THE APPELLEES SUMMARY JUDGMENT WHEN THERE WAS UNCONTROVERTED EVIDENCE THAT APPELLANT DISCOVERED THE FRAUD IN 1998 AND THE INSTANT LAWSUIT WAS THEREFORE TIMELY FILED WITHIN FOUR YEARS THEREOF.
 {¶ 15} IV. THE COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEES ON THE GROUND OF LACHES WHEN THE CLAIM IS FOR THE TORT OF FRAUD AND LACHES IS A DEFENSE ONLY IN EQUITY.[2]
{¶ 16} According to Civ.R. 56, summary judgment shall be entered in favor of a moving party if:
 {¶ 17} * * * (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.[3]
{¶ 18} We note at the outset that before an individual can have standing to assert a claim, he must be the "real party in interest" to the action.[4] In defining the foregoing phrase, the Supreme Court of Ohio has indicated that it is not sufficient for the individual to have a general interest in the subject matter of the action; instead, the individual must be the party who will directly be helped or harmed by the outcome of the action.[5] In other words, the individual must have a personal stake in the result of the controversy.[6] The purpose of the standing requirement is not only to ensure that the defendant will be able to raise all relevant issues which he would be entitled to assert against the real party in interest, but additionally to ensure that the defendant will not be required to defend the same case again against the real party in interest.[7]
{¶ 19} With these principles in mind, we find that, to the extent Cox sought to assert claims based on any impropriety on the part of GWD in entering into any loan or note agreement with Obradovic, or in failing to account to Obradovic or other judgment creditors in the receivership case, he has no standing. He may not sue for damages on those claims because he is not a creditor, nor is he in the position of any other potential party vis a vis GWD in its preparation of a defense to these claims. In addition, he would not benefit from victory on these claims, even if such claims were successful.
{¶ 20} Accordingly, his complaint must be read in the context of asserting claims that GWD defrauded or failed to account to him individually. The Ohio Supreme Court confirms the following mandatory elements of the tort of fraud as follows:
 {¶ 21} (1) a representation, or where there is a duty to disclose, concealment of fact;
 {¶ 22} (2) which is material to the transaction at hand;
 {¶ 23} (3) made falsely, with the knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred;
 {¶ 24} (4) with the intent of misleading another into relying upon it;
 {¶ 25} (5) justifiable reliance upon the representation or concealment; and
 {¶ 26} (6) a resulting injury proximately caused by the reliance.[8]
{¶ 27} The quit claim deed that Obradovic executed in favor of Cox contains a provision explicitly canceling the Cox/Obradovic debt and mortgage. After that deed was executed and recorded, Obradovic had no further financial obligation to Cox. He cannot claim he was entitled to benefit from the liquidation of Obradovic's ownership interest in 5304 or its assets based on their creditor-debtor relationship because he was no longer a creditor.
{¶ 28} GWD had no duty to account to Cox for the disposition of the 5304 liquor license/business proceeds merely because Obradovic gave to GWD a personal guarantee and the mortgage on the real estate he transferred to Cox. Any impropriety on the part of GWD in attaining any of the receivership proceeds without legal right worked to the detriment of Obradovic and his creditors and, in line with our discussion of Cox's standing, supra, would exclusively be theirs to assert.
{¶ 29} Contrary to his allegation that GWD failed to account for the receipt of the proceeds of the foreclosure sale of his real property, Cox admitted at deposition that no irregularities were present in the disposition of the proceeds under the foreclosure case; at that point, GWD, as the superior creditor, was correctly awarded the proceeds in partial satisfaction of its valid mortgage. Essentially, Cox's argument is based upon the assumption that, had the Municipal Court receivership been resolved prior to the foreclosure case, the Municipal Court would have awarded GWD the proceeds from the liquor license transfer and those proceeds would have been applied to the partial satisfaction of GWD's superior lien on the property. Had that been the case, Cox contends, at least part of the proceeds from a subsequent foreclosure and sale of his real estate would have inured to his benefit as the owner.
{¶ 30} This argument also fails because there is no evidence or allegation that GWD drew out the receivership proceedings in order to defraud Cox of a potential recovery from the foreclosure action. Moreover, even if we assume Cox's hypothetical, he presents no evidence that he would have realized any benefit from the foreclosure action in light of the payment of the proceeds to GWD and the claim of the next priority lienholder, Lutheran Medical Center.
{¶ 31} Cox did not establish a duty on the part of GWD to disclose how the receivership or foreclosure proceeds were distributed or damages from GWD's failure to do so. He is unable to satisfy all elements of the claim of fraud and cannot rebut the evidence GWD presented to justify the grant of summary judgment. No material issue of fact was in dispute, GWD was entitled to judgment as a matter of law, it appeared from the evidence that reasonable minds could come to but one conclusion, and viewing such evidence most strongly in favor of Cox, that conclusion was adverse to him. Cox's first two assignments of error are not well taken, rendering his third and fourth assignments moot.[9]
Judgment affirmed.
It is ordered that the appellees recover from appellant their costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., and DIANE KARPINSKI, J., CONCUR
[1] The decision found its interest was actually $20,017 at thirteen and one-half percent (13 1/2%) interest per annum from June 23, 1994.
[2] GWD agreed in its brief with this assignment of error; we, therefore, proceed as if the judge, who granted its motion for summary judgment without opinion, did not do so on the basis of the doctrine of laches.
[3] Zivich v. Mentor Soccer Club, Inc., supra, citing Dresher v.Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264. Internal citation omitted.
[4] Civ.R. 17(A).
[5] Shealy v. Campbell (1985), 20 Ohio St.3d 23, 24, 485 N.E.2d 701.
[6] State ex rel. Dallman v. Court of Common Pleas (1973),35 Ohio St.2d 176, 179, 298 N.E.2d 515.
[7] Shealy v. Campbell, supra.
[8] State ex rel. Ellis v. Industrial Commission of Ohio (2000),92 Ohio St.3d 508, 511, 751 N.E.2d 1015.
[9] App.R. 12.