JOURNAL ENTRY AND OPINION
{¶ 1} Rose Morelli ("Morelli") appeals from the damage award entered in the Cuyahoga Common Pleas Court. Morelli argues the jury's award of damages was against the manifest weight of the evidence. Liliana Walker ("Walker") cross appeals the trial court's decision denying her motion for a directed verdict, the trial court's admission of evidence and jury instructions, and the trial court's decision not to join a party to the lawsuit. For the following reasons, we affirm in part, reverse in part and remand. *Page 3 
 {¶ 2} This case arose as a result of a fire that occurred in the early morning hours of January 17, 2004, at Morelli's home located at 31206 Hilliard Boulevard in Westlake, Ohio.
 {¶ 3} On January 16, 2004, Morelli hosted a surprise birthday party at her residence for a small gathering of friends. Walker, an admitted on-and-off again smoker for twenty years, asked Morelli if she could smoke. Morelli allowed Walker to smoke inside of her garage because of the extremely cold temperatures that night. Walker stated that she smoked two cigarettes throughout the duration of the party. After the last guest left the party, Morelli began to clean her house.
 {¶ 4} At approximately midnight, Morelli went into her garage to dispose of her garbage. Morelli stated that at the time she went into her garage, she was only wearing her pajamas and that she moved quickly because the garage floor was cold. Morelli also stated that she was pleasantly surprised to smell a sweet smell, not the smell she usually associated with cigarette smoke. Morelli then went back inside her house and fell asleep on her couch.
 {¶ 5} At some point during the night, the smoke detectors inside her house went off, waking Morelli from her sleep. Morelli stated that she went into her garage but was met by a wall of fire. Morelli then ran through her house, grabbed a jacket and her cellular phone and fled from the house. Morelli called the fire department, who arrived a short time later. *Page 4 
 {¶ 6} When the Westlake Fire Department arrived, the fire was blazing inside Morelli's garage. Morelli's Jeep Cherokee, which was parked inside the garage, had not yet been engulfed in the flames. The firefighters noticed that the fire was located in front of the vehicle and later identified the point of origin as the northeast corner of the garage. Within that identified point of origin were two electrical outlets, a refrigerator and a wooden cart on top of which, were two containers of peat moss and dahlia bulbs.
 {¶ 7} Investigators spoke with Morelli and asked her if anyone was smoking inside her garage that evening. Morelli informed the investigators that Walker had indeed smoked two cigarettes inside of her garage that night. When the investigators spoke with Walker, Walker admitted to smoking inside the garage but claimed that she extinguished the coal tip of her cigarettes inside a glass and then placed the butts of her cigarettes inside her cigarette pack.
 {¶ 8} After learning that Walker smoked inside the garage near the containers of peat moss, investigators identified four possible points of origin for the fire: each of the two outlets, the refrigerator, and the negligent disposal of smoking materials into the container of peat moss.
 {¶ 9} On November 8, 2004, Morelli filed a complaint against Walker alleging that Walker's negligent disposal of smoking materials caused the January 17, 2004 fire. During trial, the jury heard from plaintiff's and defendant's experts as well as from Morelli and Walker. Morelli also supplied testimony from damage experts and *Page 5 
alleged $1,024,437 in damages as a result of the fire. At the close of the evidence, the jury returned a verdict in favor of Morelli and determined that Walker was liable for Morelli's damages in the amount of $369,000.
 {¶ 10} Fourteen days after the jury returned its verdict, Morelli forwarded a motion for prejudgment interest and a motion for judgment notwithstanding the verdict/motion for a new trial as to damages. However, the Cuyahoga County Clerk of Courts inexplicably returned the latter motion to Morelli's attorney, who again sent the returned motion to the clerk. The motion was eventually filed on August 21, 2006. Walker moved to strike Morelli's motion, asserting that it was untimely filed. In an abundance of caution, Morelli filed the instant appeal, raising a single assignment of error. Nonetheless, Morelli then filed a motion to stay the appeal and remand the matter to the trial court to resolve the pending motions. This court denied Morelli's motion. Walker then cross appealed, raising the four assignments of error contained in the appendix to this opinion. For purposes of clarity, we shall address Walker's cross appeal first.
 {¶ 11} In Walker's first cross-assignment of error, she argues that the trial court erred when it denied her motion for a directed verdict. Specifically, Walker argues that Morelli's expert provided unreliable testimony in violation of Evid.R. 702(C) and therefore, he could not establish the element of proximate cause. This assignment of error lacks merit. *Page 6 
 {¶ 12} The standard of review in this case is set forth in Civ.R. 50(A)(4). Civ.R. 50(A)(4) states that a motion for directed verdict should be granted when, after construing the evidence most strongly in favor of the party against whom the motion is directed, the reviewing court finds that reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to the nonmoving party. Wagner v. Midwestern Indemn., 83 Ohio St.3d 287, 294,1998-Ohio-111.
 "A motion for directed verdict raises the legal question of whether the plaintiff presented evidence legally sufficient to submit the case to the jury. When ruling on a motion for a directed verdict, the court must not consider the weight of the evidence nor the credibility of the witnesses. `If there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied.' However, when the trial court, after construing the evidence most strongly in favor of the non-moving party, finds that reasonable minds could reach but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court must grant the motion." Corsaro v. ARC Westlake Village, Inc., Cuyahoga App. No. 84858, 2005-Ohio-1982. (Internal citations omitted.)
 {¶ 13} The sole legal argument Walker raises in support of her argument that her motion for directed verdict should have been granted is that the scientific method of differential diagnoses or deductive reasoning runs afoul of the recent Ohio Supreme Court decision inValentine v. Conrad, 110 Ohio St. 3d 42, 2006-Ohio-3561. Therefore, Walker is not so much arguing that a directed verdict should have been granted, inasmuch as she argues that Morelli's expert should not have been permitted to testify under Evid.R. 702. *Page 7 
 {¶ 14} A thorough reading of Valentine reveals that the Ohio Supreme Court limited the use of differential diagnoses in medical causation matters under certain circumstances.
 "The experts relied heavily on differential diagnoses to reach their conclusions. `Differential diagnosis' describes the process of isolating the cause of a patient's symptoms through the systematic elimination of all potential causes. Although differential diagnosis is a standard scientific method for determining causation, see Westberry v. Gislaved Gummi AB (C.A.4, 1999), 178 F.3d 257, 262, its use is appropriate only when considering potential causes that are scientifically known. For example, in Westberry, the plaintiff alleged that breathing airborne talc caused aggravation of a preexisting sinus condition. Because the parties did not dispute that inhalation of high levels of talc causes irritation in mucous membranes, differential diagnosis was a valid method to establish causation. Id. at 264-265. In contrast, Drs. Newton and Miner were unable to establish that any of the chemicals to which Mr. Valentine was exposed are capable of causing glioblastoma multiforme. Accordingly, differential diagnosis is not a reliable method for determining legal causation in this case." Id.
 {¶ 15} Accordingly, it is clear that the Ohio Supreme Court did not outright reject differential diagnosis by experts. The court merely refused to accept the use of differential diagnoses when it was not scientifically known whether the chemicals that Mr. Valentine was exposed to were capable themselves of causing the alleged ailments or condition.
 {¶ 16} In the present case, Morelli's expert, Brian Churchwell ("Churchwell"), testified to the scientific properties of peat moss and its abilities to smolder over time before erupting into flames. Additionally, Walker's own expert testified that cigarettes or other smoking materials can cause peat moss to smolder and ignite. *Page 8 
We therefore find this case distinguishable from Valentine and conclude that the trial court did not err when it permitted Churchwell to testify about the cause of the fire using differential diagnosis or deductive reasoning.
 {¶ 17} Moreover, we further conclude that the trial court did not err when it denied Walker's motion for directed verdict. As stated above, a motion for directed verdict should only be granted when, after viewing the evidence in a light most favorable to the nonmoving party, the court finds that reasonable minds could reach one conclusion upon the evidence submitted and that conclusion is adverse to the nonmoving party.Corsaro, supra. In the present case, reasonable minds could reach different conclusions on the evidence presented.
 {¶ 18} During trial, Churchwell opined that the cause of the fire was Walker's negligent disposal of smoking materials. Churchwell testified that he reached this conclusion by employing the scientific method set forth in the National Fire Protection Association 921 Guidebook of Fire Investigations ("Guidebook"). Churchwell personally inspected the fire site on numerous occasions and determined the area of fire origin to be the northeast corner of Morelli's garage. He then made a determination as to the four possible causes of the fire from this area of origin. Churchwell identified these causes as each of the two outlets, the refrigerator, and the negligent disposal of smoking materials. By using the deductive reasoning cited in the guidebook, Churchwell sought to eliminate as many of the possible causes as he could. *Page 9 
 {¶ 19} Churchwell sought the assistance of Randy Bills ("Bills"), a forensic electrical engineer. Bills, who testified at trial, concluded that three of the possible causes of fire involved possible electrical malfunctions. However, Bills eliminated these potential causes after a thorough inspection. It was through this method of deductive reasoning that Churchwell concluded that the sole possible cause of the fire was Walker's negligent disposal of smoking materials.
 {¶ 20} While Walker provided her own expert, Wayne Groah ("Groah"), who opined that the cause of the fire related to the normally operating refrigerator that ignited nearby combustibles, reasonable minds could reach different conclusions when considering all of the evidence. Accordingly, the trial court did not err when it denied Walker's motion for a directed verdict.
 {¶ 21} Walker's first cross-assignment of error is overruled.
 {¶ 22} In her second cross-assignment of error, Walker argues that the trial court erred when it permitted plaintiff's expert to testify to matters outside of his personal knowledge or evidence in the record. This assignment of error lacks merit.
 {¶ 23} Walker argues that Churchwell did not have personal knowledge that she extinguished her cigarettes into the container of peat moss, nor did the evidence show that Walker extinguished her cigarettes in such a manner. In support of this argument, Walker correctly cites to the principal in Ohio law that requires an expert witness' opinion to be based upon facts within the witness' own personal knowledge *Page 10 
or upon facts shown by other evidence. See, Evid.R. 703. However, Walker misconstrues the basis for Churchwell's testimony.
 {¶ 24} In the present case, it was entirely appropriate for Churchwell to testify to his opinion as to the cause of the fire. Churchwell's testimony concerning the area of origin of the fire was based upon his personal observations and numerous investigations of the fire scene. Additionally, Churchwell's elimination of three of the four possible causes of ignition was based on deductive reasoning and the testimony of the forensic engineer, Bills. The mere fact that Churchwell was not present in the garage at the time Walker extinguished her cigarettes should not and does not preclude Churchwell from testifying concerning the cause of the fire, especially when other evidence in the record showed this area to be the cause. Churchwell's opinion was based on his personal observations as well as the appropriate scientific method for fire investigation.
 {¶ 25} Walker's argument that Churchwell reached his conclusion by making an impermissible assessment of her credibility is without merit. The mere fact that Walker denied extinguishing her cigarettes into the peat moss does not mean that Churchwell is forbidden from concluding that the cause of the fire was the disposal of smoking materials into the container. Churchwell testified through acceptable scientific methods that he eliminated any other possible cause of the fire outside of the negligent disposal of cigarette materials. This conclusion was based on the *Page 11 
evidence, not Walker's credibility. Accordingly, Churchwell's testimony does not violate Evid.R. 703.
 {¶ 26} Walker's second cross-assignment of error is overruled.
 {¶ 27} In her third cross-assignment of error, Walker argues the trial court erred when it instructed the jury regarding the standard for preponderance of the evidence under Ohio law. This assignment of error lacks merit.
 {¶ 28} "A trial court has discretion to use its own language to instruct the jury on legal principles." Malloy v. City of Cleveland
(March 4, 1999), Cuyahoga App. No. 73789. This court's review of the giving or failure to give a jury instruction is limited to determining whether the trial court abused its discretion, and, if so, whether that refusal was prejudicial. Id.; see, also, Cherovsky v. St. Luke's Hosp.of Cleveland (Dec. 14, 1995), Cuyahoga App. No. 68326. ("In order to obtain a reversal on the giving of an alleged improper instruction, a plaintiff must demonstrate both that the instructions, when considered as a whole, did not clearly and fairly express the law applicable to the case and, further, that substantial rights have been directly affected to plaintiff's prejudice.")
 {¶ 29} The trial court gave the following jury instruction on preponderance of the evidence:
 "Now, the person who claims that certain facts exist must prove them by a preponderance of the evidence. This duty is known as the burden of proof. *Page 12 
The burden of proof is on the plaintiff to prove the facts necessary for her case by a preponderance of the evidence. Later the Court will outline and explain the factual issues.
 Preponderance of the evidence is the greater weight of the evidence; that is, evidence that you believe because it outweighs or overbalances in your mind the evidence opposed to it.
 A preponderance means evidence that is more probable, more persuasive or of greater probative value.
 It is the quality of the evidence that must be weighed. Quality may or may not be identical with quantity.
 In determining whether an issue has been proved by a preponderance of the evidence you should consider all of the evidence regardless of who produced it.
 The term preponderance of the evidence means nothing more than that the evidence on one side of the scale outweighs that on the other.
 If the weight of the evidence is equally balanced or if you are unable to determine which side of an issue has the preponderance, the party who has the burden of proof has not established such issue by a preponderance of the evidence."
 {¶ 30} Walker finds error with the trial court's use of the phrase "the evidence on one side of the scale outweighs that on the other." (Tr. 739.) Specifically, Walker claims that the scale reference gives the jury the impression that the burdens on both the plaintiff and defendant are equal. This argument is without merit because the entire jury instruction on probable cause, when taken together, clearly enunciates that the greater burden rests with the plaintiff. Moreover, the language cited by Walker in Davis v. Zucker (1951), 106 N.E.2d 169, as the appropriate *Page 13 
language on preponderance of the evidence matches the language used by the court as cited above.
 {¶ 31} Accordingly, Walker's third cross-assignment of error is overruled.
 {¶ 32} In her fourth and final cross-assignment of error, Walker argues that the trial court erred when it failed to join Westfield Insurance Company as a real party in interest. This assignment of error lacks merit.
 {¶ 33} Civ.R. 17(A) provides as follows:
 "Every action shall be prosecuted in the name of the real party in interest. * * * No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."
 {¶ 34} "A `real party in interest' has been defined as one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, i.e., one who is directly benefitted or injured by the outcome of the case." Shealy v. Campbell (1985),20 Ohio St.3d 23, 24. The purpose behind the real party in interest rule is "to enable the defendant to avail himself of evidence and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party at interest on the same matter." Id. *Page 14 
 {¶ 35} In the present case, Westfield Insurance Company became subrogated to the rights of Morelli insofar as it made payments pursuant to Morelli's insurance policy. Therefore, Westfield Insurance Company is a real party in interest, pursuant to Civ.R. 17(A). In accordance with Civ.R. 17(A), Westfield executed and provided to defense counsel and the court a ratification affidavit pursuant to Civ.R. 17(A) agreeing to be bound by any decision rendered in this matter.
 {¶ 36} Walker does not address the ratification affidavit in her brief, nor does she provide this court with any legal ground why the trial court's refusal to join Westfield Insurance as a party requires reversal. Interestingly, Walker does not even make this argument; she merely states that the trial court erred and requests no relief from this error.
 {¶ 37} We find that because Westfield Insurance provided an affidavit to the trial court agreeing to be bound by any decision made, Westfield eliminated any concern about multiple lawsuits and judgments against Walker. Additionally, because Walker has failed to demonstrate to this court any prejudice resulting from the trial court's decision, we overrule her fourth cross-assignment of error.[1] *Page 15 
 {¶ 38} We affirm the judgment of the trial court as it relates to Walker's cross appeal.
 {¶ 39} In her sole assignment of error, Morelli argues that the damages award was against the manifest weight of the evidence. We agree.
 {¶ 40} To set aside a damage award as inadequate and against the manifest weight of the evidence, a reviewing court must determine that the verdict is so gross as to shock the sense of justice and fairness, cannot be reconciled with the undisputed evidence in the case, or is the result of an apparent failure by the jury to include all the items of damage making up the plaintiff's claim. Whiteside v. Bennett, Hamilton App. No. 050605, 2006-Ohio-3600.
 {¶ 41} Pursuant to App.R. 12(D), a reviewing court may order a retrial of only those specific issues, claims, or defenses from the original trial that resulted in error. Id. "This is so because error as to one issue need not attach to others, and issues tried without error must be allowed to stand." Id.
 {¶ 42} In the present case, the jury heard undisputed evidence that Morelli suffered significant damages as a result of the January 17, 2004 house fire. Specifically, Morelli and damages experts Scott Whaley and David Astorino testified to the actual extent of property damage incurred. The damages experts explained the basis for their testimony in conformity with the standards employed under Ohio law for recovery of such damages in tort actions. The experts then established that as a result of the fire, Morelli suffered$1,024,437 in damages. *Page 16 
 {¶ 43} In response, Walker did not ask a single question of the damages experts on cross-examination as to either the amount of damages or their qualifications; Walker did not contest or contradict the extent of damages, and Walker never even argued that the damages claimed were invalid or erroneous.
 {¶ 44} After hearing all of the evidence, the jury returned a verdict in favor of the plaintiff, finding that Walker's negligence was the cause of the January 17, 2004 house fire. Inexplicably, the jury awarded Morelli $369,000 in damages. The source of this amount of damages is unknown. Both Morelli and Walker have provided this court with their theories as to why the jury awarded this amount. Morelli contends that during deliberations, the jury asked the court whether they may take into consideration any insurance coverage Morelli may have had. Because of this question, Morelli claims the jury was influenced by improper considerations regarding insurance coverage that was not in evidence. In response, Walker claims that the Westlake Fire Department's report, which was admitted into evidence, establishes that the dollar value of the lost property was $300,000, and that there was other testimony from which the jury could award $69,000. We find no merit to either argument.
 {¶ 45} Nonetheless, what this court cannot disregard, is that the jury's award of $369,000, cannot be reconciled with the undisputed evidence presented in this case. Morelli and two damages experts testified that the amount of damages was in excess of one million dollars. Specifically, Morelli's damages experts testified that *Page 17 
the house alone was worth $434,163.00. Walker did nothing to contest this amount or even question the two damages experts concerning the amount or their methodology in reaching the amount of damages. Accordingly, we conclude that the trial court's award of damages was contrary to the manifest weight of the evidence. We therefore sustain Morelli's sole assignment of error and remand the matter to the trial court for a new trial on the sole issue of damages.
 {¶ 46} The judgment of the trial court is affirmed in part, reversed in part and remanded.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., and KENNETH A. ROCCO, J., CONCUR
 Appendix A *Page 18 
Assignments of Error:
 "I. The limited amount of compensatory damages awarded by the jury (more than $650,000 less than the uncontroverted and unopposed property damages demonstrated at trial) was against the manifest weight of the evidence. The verdict itself was not recorded in the transcript record but is reflected on the official jury verdict slip."
Cross-Assignments of Error:
 "I. The trial court erred in denying Appellee/Cross Appellant's motion for directed verdict as the record contained no evidence that Appellee/Cross-Appellant caused the fire and Appellant's expert witness could not establish proximate cause as a matter of law.
 II. The trial court erred by admitting into evidence testimony by Appellant's fire examination expert witness when the testimony was not based upon personal knowledge or evidence in the record and included evaluations of other witnesses' credibility.
 III. The trial court erred in giving the jury an improper instruction regarding the standard for preponderance of the evidence under Ohio law.
 IV. The trial court erred in denying Appellee's motion to join Westfield Insurance Company as the real party in interest."
[1] Several federal courts have applied Civ.R. 17(A)'s identical federal counterpart and have denied joinder motions when the subrogated insurance company has ratified the suit and agreed to be bound thereby.Levy Jewelers, Inc. v. ADT Sec. Sys., Inc. (S.D.Ga.1999),187 F.R.D. 701, 702; Hancote v. Sears, Roebuck Co. (E.D.Pa.1982), 93 F.R.D. 845,846. *Page 1